IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:21-cv-00206-M

| | |
|---|---|
| JASMEN CORPORATION, d/b/a TAZ's, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHRISTOPHER D. EDWARDS, ) <br> CHRISTOPHER D. EDWARDS AGENCY, ) <br> LLC, and NATIONWIDE MUTUAL FIRE ) <br> INSURANCE COMPANY, ) <br> ) <br> Defendant. ) | ORDER |

Before the court are Defendants motions to dismiss this case because the Plaintiff's claims are barred by the applicable statutes of limitations. On March 17, 2022, the court held a hearing on stipulated facts. [DE 118]. For the reasons stated herein, the court holds all of Plaintiff's claims are barred by the applicable statutes of limitations.

**I.   Background**

A.   Stipulated Facts

At a hearing on March 17, 2022, the parties stipulated to the following facts. [DE 118]. These stipulations are also reflected in the parties' Joint Pre-Trial Order. [DE 84, at 2–3, 5–6].

Plaintiff Jasmen Corporation is a North Carolina corporation that owned and operated a convenience store in Raleigh, North Carolina, called Taz's at 209 South Wilmington Street. Defendant Nationwide Mutual Fire Insurance Company is an Ohio corporation regularly transacting business and providing insurance in the State of North Carolina. At all times during the period from September 2, 2012, to September 30, 2018, Defendant Christopher D. Edwards was an agent of Nationwide and was the sole member-manager of a North Carolina limited liability

company, Defendant Christopher D. Edwards Agency, LLC. From June 2011 until June 2018, Plaintiff had an effective business owner's insurance policy with Defendant Nationwide on the convenience store located at 209 South Wilmington Street.

On or about October 2012, Plaintiff's president, Mr. Taiseer Zarka, met with Defendant Edwards. At this time, Edwards personally visited Plaintiff's business location at 209 South Wilmington Street. At this meeting, Mr. Zarka requested an insurance policy from Mr. Edwards. This was the only face-to-face meeting between the Plaintiff and Defendant Edwards.

Mr. Edwards provided an insurance policy to Mr. Zarka. That policy included coverage for employee dishonesty capped at $10,000. The parties submitted stipulated copies of the insurance policy and subsequent renewals of the same policy. [DE 37-6, DE 37-8, DE 37-33].[1] Plaintiff received the policy and paid the premiums. In June 2013, June 2014, and June 2015, Plaintiff received a copy of the same policy, which included coverage for employee dishonesty capped at $10,000. Each year, Plaintiff renewed the same policy and paid the same premium. Each year, the policy went into effect. Each year, the policy carried the same $10,000 dishonest-employee coverage.

Plaintiff alleged that a Taz employee, Mourad Fadel, embezzled money from Taz's money services operation from January 1, 2015 until July 21, 2017. In August of 2017, Plaintiff filed a claim with Nationwide for losses from the alleged embezzlement. The limit of liability for employee dishonesty under the policy then in effect was $10,000. That $10,000 limitation was in effect before Edwards met with Plaintiff and it remained in effect after he met with Plaintiff. [DE

---

[1] In the Joint Pre-Trial Order, the parties "stipulated and agreed that each of the exhibits identified by the Defendants is genuine, and, if relevant and material, may be received in evidence without further identification or proof," which includes "[a]ll yearly policy renewals for Jasmen Corp from 2009-2018." [DE 84, at 6].

2

37-6, DE 37-8, DE 37-33]. After Defendants investigated the claim, Defendants paid Plaintiff $10,000.

Relevant here, at a different store location, in 2010, Plaintiff was the victim of an armed robbery. At that location, Plaintiff operated a convenience store with a money services operation, similar to the business at issue in this case. Approximately $50,000 was stolen from Plaintiff in the armed robbery. Plaintiff filed a claim for the loss with Nationwide and Nationwide paid $50,348 under a different insurance policy. Nationwide paid Plaintiff under a capped-coverage provision that applied to business losses from theft.

B.    Procedural History

After Nationwide paid $10,000 on Plaintiff's claim for employee embezzlement, Plaintiff filed the present adversary proceeding on June 27, 2019. [DE 1]. The proceeding arises under and relates to the Chapter 11 bankruptcy case of Jasmen Corp., Case No. 19-00956-5-DMW. Plaintiff raises eight claims for relief: (1) vicarious liability, (2) breach of fiduciary duty, (3) negligence, (4) gross negligence, (5) breach of contract, (6) unfair and deceptive trade practices, (7) fraud, and (8) punitive damages. The crux of Plaintiff's Complaint is that Defendants failed to procure sufficient insurance coverage for Plaintiff, and, as a result, Plaintiff's money services operation was underinsured. The core of Defendants' defense is that they provided Plaintiff with the requested coverage, satisfied any legal duty owed Plaintiff, and even if Defendants committed a wrong, Plaintiff's failure to read its insurance policy and understand that its coverage for a dishonest employee was $10,000, makes the Plaintiff contributorily negligent, barring any recovery. Important here, Defendants also contend that all of Plaintiff's claims are barred by the applicable statutes of limitations.

3

After the bankruptcy court denied Defendants' motions to dismiss, Defendants filed an Answer. [DE 23]. The Answer contained several affirmative defenses, including all applicable statutes of limitations. After further motions to dispose of the case were denied and mediation resulted in an impasse, the parties filed a Joint Pre-Trial Order on April 5, 2021. [DE 84]. Defendants refused consent to entry of final orders or judgments by the bankruptcy court. The case was transferred to this court on April 19, 2021. [DE 86].

The court held a telephonic status conference on October 28, 2021. [DE 90]. The court issued a jury trial scheduling order on December 7, 2021. [DE 91]. The parties filed trial briefs on March 7, 2022. [DE 109, DE 110, DE 111]. Defendants renewed their claims regarding the statutes of limitations and Plaintiff replied in response. *Id.* The court held a hearing on March 17, 2022, to determine if the statutes of limitations barred Plaintiff's claims as a matter of law. [DE 118].

## II. Analysis

"When the affirmative defense of the statute of limitations has been pled, 'the burden is on the plaintiff to show that his cause of action accrued within the limitations period.'" *Baum v. John R. Poore Builder, Inc.*, 183 N.C. App. 75, 80, 643 S.E.2d 607, 610 (2007). "A plaintiff sustains this burden by showing that the relevant statute of limitations has not expired." *Acts Ret.-Life Cmtys., Inc. v. Town of Columbus*, 248 N.C. App. 456, 459, 789 S.E.2d 527, 529 (2016). For the reasons that follow, Plaintiff has not met its burden to show that its causes of action accrued within the applicable limitations period. Additionally, Plaintiff has not met its burden to demonstrate the applicability of any exception to the statutes of limitations.

All of Plaintiff's claims carry a three-year statute of limitations, except for its unfair and deceptive trade practices claim, which carries a four-year statute of limitations. Plaintiff's claim

4

for breach of contract to procure insurance is subject to a three-year statute of limitations. N.C.G.S. § 1-52(1). Plaintiff's negligence claims are subject to three-year statutes of limitations. *Scott & Jones, Inc. v. Carlton Ins. Agency, Inc.*, 196 N.C. App. 290, 293–95, 677 S.E.2d 848, 850–51 (2009) (holding claims against insurance agents for negligence and breach of contract are subject to the three-year statute of limitations under N.C.G.S. § 1-52). Plaintiff's claim for breach of a fiduciary duty is subject to a three-year statute of limitations that accrues when the breach is discovered or reasonably should have been discovered. *Trillium Ridge Condo Ass'n v. Trillium Links & Vill.*, LLC, 236 N.C. App. 478, 501, 764 S.E.2d 203, 219 (2014) ("Breach of fiduciary duty claims accrue upon the date when the breach is discovered and are subject to a three year statute of limitations."). Plaintiff's claim of fraud is subject to a three-year statute of limitations that accrues when the fraud is discovered or reasonably should have been discovered. N.C.G.S. § 1-52(9) ("For relief on the ground of fraud or mistake; the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake"). Plaintiff's claim of unfair and deceptive trade practices is subject to a four-year statute of limitations that accrues when the practice is discovered or reasonably should have been discovered. *Stunzi v. Medlin Motors, Inc.*, 214 N.C. App. 332, 340, 714 S.E.2d 770, 776 (2011) ("Plaintiff also argues that the '[u]nfair trade practices claims are subject to a four year limitations period from the date of the accrual of the cause of action. N.C. Gen. Stat. § 75-16.2' and that this period also runs from the date of discovery or when the fraud should have been discovered.").

Plaintiff commenced this action on June 27, 2019. [DE 1]. As a result, Plaintiff must prove that all of its causes of action accrued on or after June 27, 2016, except for its claim of unfair and deceptive trade practices, which Plaintiff must prove accrued on or after June 27, 2015. Plaintiff fails to do so.

5

All of Plaintiff's claims accrued when Defendants issued Plaintiff an insurance policy in October of 2012. At issuance of the insurance policy, the alleged failure to procure insurance occurred and Plaintiff was under a duty to read the policy. *Baggett v. Summerlin Ins. & Realty, Inc.*, 143 N.C. App. 43, 53, 545 S.E.2d 462, 468 (Tyson, J., dissenting) ("Persons entering contracts of insurance, like other contracts, have a duty to read them and ordinarily are charged with knowledge of their contents."), *reversed per curiam* by the North Carolina Supreme Court at 354 N.C. 347, 554 S.E.2d 336, 337 (2001) ("For the reasons stated in the dissenting opinion by Judge Tyson, the decision of the Court of Appeals is reversed."). The policy plainly stated that Plaintiff's coverage for employee dishonesty was $10,000. At that time, Plaintiff discovered or reasonably should have discovered the alleged wrongdoing. *See id.* at 53, 545 S.E.2d at 468–69 ("Where a party has reasonable opportunity to read the instrument in question, and the language of the instrument is clear, unambiguous and easily understood, failure to read the instrument bars that party from asserting its belief that the policy contained provisions which it does not.").[2]

Even if Plaintiff did not discover the alleged wronging in October of 2012, all of Plaintiff's claims accrued, at the latest, in June of 2013 when Plaintiff received a copy of its insurance policy containing the $10,000 dishonest-employee coverage. At that time, Plaintiff discovered, or should have reasonably discovered, that its dishonest-employee coverage was $10,000. If that was

---

[2] Discovery of an alleged wrongdoing "is defined as actual discovery or the time when the [wrongdoing] should have been discovered in the exercise of due diligence." *Cebula v. Givens Ests., Inc.*, 235 N.C. App. 217, *5, 763 S.E.2d 338 (2014). Although a determination of Plaintiff's exercise of due diligence is usually a question for the jury, "[f]ailure to exercise due diligence may be determined as a matter of law . . . where it is 'clear that there was both capacity and opportunity to discover the mistake." *Spears v. Moore*, 145 N.C. App. 706, 708–09, 551 S.E.2d 483, 485 (2001). In this case, the parties stipulated that, each year, the Plaintiff received a copy of its insurance policy, renewed the policy, and paid the premiums. Plaintiff was under a duty to read the policy's plain terms. Plaintiff had the capacity and opportunity to discover any mistake.

6

insufficient coverage, then when Plaintiff accepted the policy in 2012 or renewed it in 2013, it discovered or should have reasonably discovered that its insurance agent failed to procure sufficient coverage. *Chisum v. Campagna*, 376 N.C. 680, 701, 855 S.E.2d 173, 188 (2021) ("[A]s soon as the injury becomes apparent to the claimant or should reasonably become apparent, the cause of action is complete and the limitation period begins to run."). The North Carolina Court of Appeals has recognized that claims accrue when a plaintiff has an opportunity to read the plain and unambiguous terms of an insurance contract:

> There is no allegation by plaintiff that he was pressured or tricked into purchasing the policy without reading it or that he was otherwise unable to determine from reading the policy what the actual terms provided regarding the duration of the payment of premiums. Thus, there is no indication that plaintiff lacked the capacity or the opportunity to discover any fraud or misrepresentation made at the time he purchased the policy. Therefore, in the exercise of reasonable diligence, he should have discovered the fraud or misrepresentation when he received the policy which clearly and significantly differed from the representations made by defendant Parks.

*Underwood v. Nw. Mut. Life Ins. Co.*, 149 N.C. App. 979, *3, 563 S.E.2d 309 (2002). *Underwood* is applicable here. Because June 2013 is the latest possible accrual date for the statutes of limitations, all of Plaintiff's claims are barred.[3]

Plaintiff also argues Defendants concealed and misrepresented the scope of Plaintiff's insurance coverage. Plaintiff argues that "[d]espite having full knowledge of Plaintiff's Money Services Operations and undertaking to advise, Defendants still failed and neglected to advise Plaintiff that he was obviously underinsured for employee dishonestly [sic] given the substantial money and securities flowing through the 209 South Wilmington Street store." [DE 111, at 15].

---

[3] Even if all of Plaintiff's causes of action do not accrue until reasonable discovery of the wrong, all of the claims are still barred by the statutes of limitations. Plaintiff should have reasonably discovered any failure to procure and any under-coverage in 2012 or 2013 when Plaintiff received its insurance policy and had the opportunity to read its plain terms.

7

If true, the failure to advise was complete upon issuance of the policy. Both parties stipulated that Plaintiff's insurance policy prescribed $10,000 coverage for employee dishonesty. [DE 84, at 2–3 ("[T]he parties hereto stipulate . . . [t]he limit of liability for employee dishonesty under that policy then in effect was $10,000.")]. The parties stipulated to copies of the insurance policy that stated in plain and unambiguous terms that Plaintiff's business was covered up to $10,000 for employee dishonesty. [DE 37-6, DE 37-8, DE 37-33]. Plaintiff has not shown that any contractual term was misrepresented or concealed. Plaintiff discovered or should have discovered Defendants alleged failure to procure sufficient insurance at the time the policy issued. 149 N.C. App. at *3, 563 S.E.2d 309.

Finally, Plaintiff contends that even if its claims are barred by the applicable statutes of limitations, the statutes are tolled by the "continuing wrong" doctrine. "A cause of action generally accrues and the statute of limitations begins to run as soon as the right to institute and maintain a suit arises." *Acts Ret.-Life Cmtys.*, 248 N.C. App. at 459, 789 S.E.2d at 459. The continuing wrong doctrine is an exception to that general rule. *Birtha v. Stonemor, N. Carolina, LLC*, 220 N.C. App. 286, 292, 727 S.E.2d 1, 7 (2012); *see also Quality Built Homes Inc. v. Town of Carthage*, 371 N.C. 60, 70, 813 S.E.2d 218, 226 (2018) ("Although the 'continuing wrong' doctrine has been treated, in some instances, as an 'exception' to the usual rules governing the operation of statutes of limitations, such a description of the doctrine in question is a misnomer given that the 'continuing wrong' doctrine does nothing more than provide that the applicable limitations period starts anew in the event that an allegedly unlawful act is repeated."). "For the continuing wrong doctrine to apply, the plaintiff must show a continuing violation by the defendant that is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Birtha*, 220 N.C. App. at 292, 727 S.E.2d at 7 (quoting *Marzec v. Nye*, 203 N.C. App. 88, 94, 690 S.E.2d 537, 542

(2010)). "Courts view continuing violations as falling into two narrow categories. One category arises when there has been a longstanding policy of discrimination. . . . In the second continuing violation category, there is a continually recurring violation." *Id.* (quoting *Faulkenbury v. Tchrs.' & State Emps.' Ret. Sys.*, 108 N.C. App. 357, 368, 424 S.E.2d 420, 425, *aff'd*, 335 N.C. 158, 436 S.E.2d 821 (1993)). The first category is not applicable here.

"As for the second category, [North Carolina] courts have used this exception narrowly." *Id.* To determine whether plaintiff is suffering from a continuing violation, the court considers "the policies of the statute of limitations and the nature of the wrongful conduct and the harm alleged." *Acts Ret.-Life Cmtys.*, 248 N.C. App. at 459, 789 S.E.2d at 530. First, the court considers the policies of the statute of limitations. "Statutes of limitation are intended to afford security against stale claims." *Id.* at 460, 789 S.E.2d at 530. Plaintiff did not file suit here until almost seven years after the wrongful conduct occurred. At the time of the wrongful conduct, Plaintiff should have reasonably discovered the wrong by reading its insurance policy. The primary purpose of the statute of limitations is to bar stale claims when, as here, the Plaintiff had notice of the wrongful conduct. *See Faulkenbury*, 108 N.C. App. at 369, 424 S.E.2d at 426 (finding no continuing wrong when "upon examination of the principles and policies of the applicable statute of limitations, we are persuaded that plaintiff Faulkenbury was aware or had reason to know of the alleged violation when she first received disability payments in October 1983."); *see also Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 6–7, 802 S.E.2d 888, 892 (2017) ("For fourteen years, however, plaintiff did not raise any question or concern regarding its rights to receive written reports and minimum annual royalty payments, nor did it inquire about restricted sales. Any increase in plaintiff's injury therefore represents the 'continual ill effects from an original violation,' and 'aggravation of the original [breach].' Because plaintiff had notice of its

9

injury yet failed to assert its rights, all of plaintiff's claims are time barred." (internal citations omitted)).

Second, the court considers the nature of the wrongful conduct and harm alleged. In particular, the court examines the wrong alleged "to determine if the purported violation is the result of 'continual unlawful acts,' each of which restarts the running of the statute of limitations, or if the alleged wrong is instead merely the 'continual ill effects from an original violation.'" *Williams v. Blue Cross Blue Shield of N. Carolina*, 357 N.C. 170, 179, 581 S.E.2d 415, 423 (2003). Plaintiff alleges Defendants failed to procure insurance resulting in under-coverage for Plaintiff's money services operation. The alleged wrongful conduct occurred in October 2012 when Plaintiff requested insurance from Defendant Edwards and Edwards undertook to provide Plaintiff with a policy, which the Plaintiff then accepted. This was the only in-person meeting between Defendant Edwards and Plaintiff. It was the only time Defendant Edwards reviewed Plaintiff's convenience store in person, including its retail business and money services operation, and then recommended an insurance policy. Plaintiff accepted that policy but now claims Defendant procured a deficient policy. The alleged wrong was completed in 2012 when Plaintiff requested, Defendant procured, and Plaintiff received and approved an insurance policy.

Plaintiff's renewal of the same insurance policy and payment of a premium each year after that meeting is not a continuing wrong or violation. The Defendants simply sent the Plaintiff a renewal copy of the same policy Plaintiff had already requested and accepted. If the policy was deficient, Plaintiff reasonably should have discovered the deficiency upon reading the policy. *Cf. Underwood*, 149 N.C. App. at *2, 563 S.E.2d 309 ("[W]here no trick or device had prevented a person from reading the paper which he has signed or has accepted as the contract prepared by the other party, his failure to read when he had the opportunity to do so will bar his right to

10

reformation.") (quoting *Setzer v. Insurance Co.*, 257 N.C. 396, 401, 126 S.E.2d 135, 139 (1962)). Plaintiff paying the premium on and renewing the same policy each year results in, at most, ongoing under-coverage caused by the original failure to procure sufficient insurance. *Cf. Hicks v. Wake Cty. Bd. of Educ.*, 187 N.C. App. 485, 490, 653 S.E.2d 236, 240 (2007) (holding the continuing wrong doctrine inapplicable when "a teacher's entitlement to an additional month's pay for every thirty days that a school board fails to vote upon the issue of granting the teacher's career status is a continual ill effect from the original violation."); *see also Acts Ret.-Life Cmtys.*, 248 N.C. App. at 462, 789 S.E.2d at 531 ("The only alleged unlawful act was the June 2002 reclassification. The higher monthly bills constituted the continual ill effects from that reclassification."). The failure to procure happened in 2012. Any deficiency in the insurance policy was completed in 2012. Any alleged injury after 2012 is simply an ill effect of the original wrong, it is not a new violation. As such, the continuing wrong doctrine does not toll the statutes of limitations for Plaintiff's claims.

**IV. Conclusion**

The court concludes Plaintiff's claims are barred by the applicable statutes of limitations. All of Plaintiff's claims are DISMISSED with prejudice.

SO ORDERED this 23d day of March, 2022.

*/s/ Richard E. Myers II*
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

11

Case 5:21-cv-00206-M    Document 119    Filed 03/23/22    Page 11 of 11